IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | * |
| | * |
| VS. | *    Case No. 2:05-cr-139-A |
| | * |
| CORY REED | * |

### MOTION TO SUPPRESS

COMES NOW the defendant, CORY REED, and pursuant to the Order on Arraignment herein dated June 9, 2005, files this his motion to suppress. Defendant moves this Honorable Court to suppress the evidence obtained against him **(1)** during a *warrantless* search of the motor vehicle driven by him, **(2)** the subsequent search of the residence at 40 Fairlane Drive, Montgomery, Alabama, and **(3)** the statements allegedly obtained from defendant after his arrest, and as grounds therefor shows as follows:

### Factual background

1. On April 28, 2005, at **9:55 a.m.**, Montgomery Police Department Detective Tommy Conway sought and received a search warrant for the premises at 40 Fairlane Drive, Montgomery, Alabama, from Municipal Court Judge, W. Troy Massey.

2. However, nearly two hours prior to the obtaining of the search warrant, DEA Officers and other law enforcement officers began a visual surveillance of the premises at 40 Fairlane Drive at about **8:00 a.m.**

3. At **9:50 a.m.** officers of the Montgomery Police Department (MPD) observed the defendant leave 40 Fairlane Drive driving a Chevrolet Tahoe accompanied by a passenger, Darrell Hayes. Detective Conway summoned a Montgomery Police marked unit to execute a traffic stop of the Tahoe. Thereafter, the officers conducted a *warrantless* search of the Chevrolet Tahoe

vehicle driven by the defendant in area of the BP gasoline station in the 2700 block of East South Boulevard, (close to Montgomery Mall) in Montgomery, Alabama. The search of passenger, Darrell Hayes, resulted in the seizure of some cocaine from his pants pocket and other quantities of cocaine from the console area of the automobile.

4. The defendant had committed no traffic crime before the stop of the Tahoe. No citation was ever issued for any violation sufficient to justify a traffic stop by the Montgomery Police Department.

5. The search of Mr. Reed's person revealed no presence of any controlled substance.

6. Detective Conway with no probable cause utilized a "drug dog" to search the Tahoe.

## Issues presented

7. The **first issue** presented is whether the officer(s) had sufficient probable cause to stop and conduct a warrantless search of the Chevrolet Tahoe driven by the defendant on the date in question.

8. The **second issue** presented is whether the officer(s) had sufficient probable cause to obtain a search warrant for the premises of 40 Fairlane Drive, Montgomery, Alabama on the date in question where the search warrant's affidavit revealed:

   a. The officer knowingly used evidence allegedly given by informant "A" that was stale.
   b. The evidence allegedly given by informant "B" was not supported by a sufficient basis to claim informant "B" as a "reliable" informant.

9. The **third issue** presented is the admissibility of defendant's alleged statements to law enforcement officers where they failed to advise the defendant of his Fifth Amendment rights as set forth in the Miranda decision of the U.S. Supreme Court.

## Discussion

10. It is axiomatic that the Fourth Amendment to the United States Constitution guarantees all of us the right to be secure in our persons, houses, papers and effects, against unreasonable searches and seizures. The Supreme Court in the case of Katz v. United States, 389

U.S. 347, 88 S.Ct. 507, 514 (1967) held that searches outside the judicial process (warrantless searches) are *per se* unreasonable. Of course, there are recognized exceptions to this rule such as the limited stop of a motor vehicle for traffic violations. See Pennsylvania v. Mims, 434 U.S. 106 (1977) and Whren v. United States, 517 U.S. 806 (1996).

11. A traffic stop is a seizure, which triggers the protections of the Fourth Amendment. Delaware v. Prouse, 440 U.S. 648, 99 S.Ct.1391, 1396, 59 L.Ed.2d 660 (1979). However, a law enforcement officer may conduct a brief investigative stop of a vehicle if the officer has, before stopping the vehicle, specific articulable facts sufficient to give rise to a reasonable suspicion that criminal conduct has occurred or is occurring. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968); United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975); United States v. Smith, 799 F.2d 704, 707 (11th Cir. 1986). Here the policeman had no traffic violation upon which to base the "traffic stop" of the Tahoe.

12. Even where the initial stop is arguably valid, the Fourth Amendment limits the **extent of detention** which may be imposed. Such detention must be brief and be related to the "investigative purposes" which brought about the initial stop. United States v. Sokolow, 490 U.S. 1, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989). Once the activity related to the traffic infraction is completed, an officer must allow the vehicle "to proceed on his way, without being subject to further delay by police for additional questioning." United States v. Walker, 933 F.2d 812, 816 (10th Cir.1991), cert. denied, 112 S.Ct. 1168 (1992) (citations omitted). The officer cannot justify continued detention unless "specific and articulable facts gave rise to a reasonable suspicion of criminal activity." United States v. Fernandez, 18 F.3d 874, 878 (10th Cir. 1994).

13. An officer's "inchoate and unparticularized suspicion or 'hunch'" does not give rise to reasonable suspicion. United States v. Sokolow, supra, 109 S.Ct. at 1585.

14. Any evidence seized as a result of such a warrantless search of the Tahoe lacking in reasonable suspicion and probable cause constitutes the "fruit" of the poisonous tree and such evidence is due to be suppressed pursuant to the exclusionary rule and the prosecution directed not to make any use thereof at the trial or any hearing in this cause of action. <u>Weeks v. United States</u>, 232 U.S. 383, 391-93, 34 S.Ct. 341, 58 L.Ed. 652 (1914); <u>United States v. Terzado-Madruga</u>, 897 F.2d 1099, 1112 (11th Cir. 1990); <u>Nardone v. United States</u>, 308 U.S. 338, 341, 60 S.Ct. 266, 84 L.Ed. 307 (1939); <u>Wong Sun v. United States</u>, 371 U.S. 471, 484, 9 L.Ed2d 441, 453, 83 S.Ct. 407 (1963).

15. Stale evidence in support of an application for search warrant. The affidavit in support of the search warrant contained "stale information." For probable cause to exist, the information supplied by a confidential informant must be timely. <u>Sgro v. United States</u>, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed.2d 260 (1932) ("[I]t is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.") Informant "A" of Detective Conway had given the information to Conway more than two months before the search warrant was sought. Search Warrants based upon "stale" information fail to create a probable cause that similar or other improper conduct is continuing. <u>United States v. Bascaro</u>, 742 F.2d 1335, 1345 (11th Cir. 1984). In some cases a second informant can "update" the first informant's stale information, but it must be updated with valid information by a reliable informant. <u>United States v. Jiminez</u>, 224 F.3d 1243, 1249 (11th Cir. 2000) (updating of stale information). The updated information upon which the Eleventh Circuit found acceptable in <u>Jiminez</u> was good quality, credible information supplied through a wire tap lasting seventeen (17) days. This type of corroborating evidence is of a very reliable nature and can easily be used to update stale information. By contrast in defendant Reed's case, the

supposed "updated" information involves the word of a drug addict who likely has significant legal problems with prior drug involvement. Such information is not of the character that the courts should use to corroborate "stale" evidence in issuing search warrants. The kind of evidence used for "updating" should be very reliable evidence such as that approved in Jiminez. See Aguilar v. Texas, 378 U.S. 108, 109, 111-13 (1964); Illinois v. Gates, 462 U.S. 213, 238 (1983). Further, the detective seeking the said search warrant did not state in the affidavit that he believed the informant's statements to be true or to be corroborated in any manner. Franks v. Delaware, 438 U.S. 154 (1978). Therefore, the search of the premises of 40 Fairland Drive was conducted in violation of the Fourth Amendment to the United States Constitution inasmuch as there was no probable cause to support said search.

16.   The discovery information claimed that the defendant was advised of his rights when taken into custody and that he made statements. However, the discovery does not contain any documents *Miranda* Rights form signed by defendant Reed. This substantiates the defendant's position that he was not given his Fifth Amendment rights in this case.

WHEREFORE, PREMISES CONSIDERED, defendant prays this Honorable Court to hear this matter and thereafter enter an Order suppressing the evidence obtained against the defendant as outlined above.

/s/ Barry E. Teague
BARRY E. TEAGUE, [TEA003]
ATTORNEY FOR DEFENDANT

ADDRESS OF COUNSEL:

Barry Teague, Esq.
138 Adams Avenue
Post Office Box 586
Montgomery, AL  36101
(334) 834-4500; FAX 834-4501
email:  *beteague36@aol.com*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document has been served upon the United States Attorney and any other counsel of record by placing same in the U.S. Mail, postage prepaid and addressed as shown below, this 29th day of June, 2005.

**Hon. Todd A. Brown**
**Assistant U.S. Attorney**
**Post Office Box 197**
**Montgomery, AL  36101**

_____
BARRY E. TEAGUE

"No Knock"
w/m

# SEARCH WARRANT

STATE OF ALABAMA            )
COUNTY OF MONTGOMERY )
CITY OF MONTGOMERY       )

**TO ANY SHERIFF, DEPUTY, MUNICIPAL OFFICER OR CHIEF OF POLICE:**

Proof of affidavits which are attached hereto and incorporated by reference, having been made this day before me, by Corporal J. T. Conway with the Special Operations Division, Narcotics and Intelligence Bureau of the Montgomery Police Department, Montgomery, Alabama. You are hereby commanded to make immediate search of the premises of:

**40 Fairlane Drive, Montgomery, Alabama, and any vehicles and outbuildings at the residence.**

For the following property: controlled substances, controlled substance paraphernalia, drug related documents, monies, drug records, and any items listed in Attachment I. If you find the same or any part thereof, to bring it forthwith before me, at my office at Municipal Court, Montgomery County, Alabama; or if the said warrant is issued for violations of a state law, return the same to any State Court.

Dated this 28TH day of April, 2005.

W.M.
Judge, Municipal Court
City of Montgomery
Montgomery, Alabama

48

## AFFIDAVIT IN SUPPORT OF A
## SEARCH WARRANT
## NO KNOCK SEARCH WARRANT

CITY OF MONTGOMERY
COUNTY OF MONTGOMERY
STATE OF ALABAMA

I, Corporal J. T. Conway, state the following is true and correct:

I am a duly authorized Police Officer for the City of Montgomery. I have been employed as a Police Officer for 17 years and have spent the last 12 years in the Narcotics Bureau. I have reason to believe and do believe that controlled substances, are being kept, stored and/or sold from within 40 Fairlane Drive, Montgomery, Alabama. The controlled substances are possibly being kept, stored and/or sold by a black male, Corey Reed, AKA C-Murder. This is in violation of the Code of Alabama 1975, Section 13A-12-211 and 231. Probable cause for this search warrant is as follows:

On February 10, 2004, Corey Reed AKA C-Murder showed a confidential and reliable informant hereinafter referred to as "A", a ¼ kilogram of cocaine and $20,000.00 in U. S. Currency. This meeting was at a studio located at the corner of Ann Street and Third Street, Montgomery, Alabama.

During the month of April 2005 a confidential and reliable informant, hereinafter referred to as "B", advised Corporal J. T. Conway that C-Murder was distributing large quantities of cocaine from 40 Fairlane Drive, Montgomery, Alabama.

The same "B" advised that C-Murder is being supplied cocaine by a black male known only as AKA Bam-Bam. The informant advised that Bam-Bam lives in Atlanta and delivers the cocaine to Montgomery, Alabama.

A subpoena was served for the utility records at 40 Fairlane Drive, Montgomery, Alabama. The subpoena revealed that Cory Reed started receiving service at that residence on or about February 15, 2005.

The "B" advised Corporal Conway that on April 28, 2005, Bam-Bam was going to deliver a quantity of cocaine to C-Murder. The informant advised that the cocaine was going to be delivered to 40 Fairlane Drive, Montgomery, Alabama.

45

On April 28, 2005, "B" informant called Corporal Conway and advised that he/she had just left 40 Fairlane Drive, Montgomery, Alabama and that he/she observed a large quantity of cocaine inside the residence. The informant advised that he/she did not know how much cocaine was there but that it was more than 2 kilograms of cocaine. The informant advised that the cocaine was packaged in zip-lock bags.

Probable cause for a "No Knock" Search Warrant is that the confidential and reliable informant advised Corporal Conway that C-Murder's brother was staying at the residence with him and that C-Murders brother was armed with an assault rifle.

"A" and "B" in this case has provided information to the Montgomery Police Department's Special Operations Division in numerous cases. The confidential and reliable informant's assistance has resulted in the seizure Cocaine, Marijuana, Weapons and U. S. Currency. There has been several arrest warrants and search warrants served as a result of his/her assistance.

This information is based on my experience and the experience and assistance of other law enforcement officers and is made for the purpose of securing a No Knock Search Warrant for 40 Fairlane Drive, Montgomery, Alabama, for cocaine, marijuana and any other controlled substances, to include: drug paraphernalia, drug monies, documents, and any items listed in attachment I.

Sworn before and subscribed to by me W. Tracy Massey _____, Judge of the Municipal Court of Montgomery, Alabama on April 28, 2005.

Corporal J. T. Conway, ID #258
Montgomery Police Department
Montgomery, Alabama

Municipal Court Judge
Municipal Court
Montgomery, Alabama

46

## ATTACHMENT I

1. Controlled, dangerous substances and related paraphernalia.

2. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

3. Papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel.

4. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, receipts, pass books, bank checks, safe deposit box keys, and other items evidence of the obtaining, secreting, transfer, concealment and/or the proceeds of illegal drug trafficking.

5. United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal drug trafficking.

6. Photographs, in particular, photographs of co-conspirators, of assets and/or controlled substances.

7. Receipts for items evidencing the expenditure of the proceeds of drug distribution, including, but not limited to, clothing, furniture and electronic equipment.

8. Paraphernalia for packaging, cutting, weighing, and distributing controlled substances, including, but not limited to, scales, baggies, spoons, walkie-talkies, CB's, night vision devices, police scanners, binoculars and parabolic microphones.

9. Indicia of occupancy, residency, and/or ownership of the premises, including, but not limited to, utility and telephone bills, keys and cancelled envelopes.

10. Firearms

11. Computers, disks, CD's, including, but not limited to, items used to store or transmit materials, recipes or proceeds used in the manufacture, distribution or possession of illegal drugs.

47

**U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION**
**RECEIPT FOR CASH OR OTHER ITEMS**

TO: (Name, Title, Address (Including ZIP CODE), if applicable)
Cory Reed
40 Fairlane Dr.
Montgomery, Al.

FILE NO.

G-DEP IDENTIFIER

FILE TITLE

DATE: 4/28/05

DIVISION/DISTRICT OFFICE
NoFD/Montgomery, Al. HIDTA

Entry: 10:30 am
Exit: 12:30 pm

1 of 3

I hereby acknowledge receipt of the following described cash or other item(s), which was given into my custody by the above named individual.

| # | AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|---|
| 1 | 1 | City Financial Receipt Gloria Reed w/ numbers on envelope. | SJE- Garbage bag at Road - 10:35 am |
| 2 | 1 | Shaving Kit containing Suspected Cocaine | NT- Cabinet in 1st Bedroom - 10:35 am |
| 3 | 1 | S&W 40cal. handgun (PBM7735) SW with magazine (loaded) | NT- On Floor 1st Bedroom on Right - 10:35 am |
| 4 | 1 | Taurus 45cal handgun S/N NXA 43857 w/loaded Mag | NT- On Floor 1st Bedroom on Right- 10:35 am |
| 5 | 1 | US Balance Digital Scale | NT- Entertainment Center |
| 6 | 1 | ~~DigiWeight Scale~~ SJE | in 1st bedroom on Right 10: |
| 6 | 1 | Digi Weigh Scale | NT- Ent. Center in 1st bedroom on Right - 10:4 |
| 7 | 1 | Box Winchester 40cal. Rounds Box Remington 45cal. Rounds 2- 45 caliber Rounds | NT- Ent. Center in 1st bedroom on Right - 10: |

49

RECEIVED BY (Signature): Scott Edwards
NAME AND TITLE (Print or Type): Scott Edwards, TFO

WITNESSED BY (Signature):
NAME AND TITLE (Print or Type):

**U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION**
**RECEIPT FOR CASH OR OTHER ITEMS**

TO: (Name, Title, Address (including ZIP CODE), if applicable)
Cory Reed
40 Fairlane Dr.
Montgomery, Al.

FILE NO.

G-DEP IDENTIFIER

FILE TITLE

DATE: 4/28/05

DIVISION/DISTRICT OFFICE
NOFD / Montgomery, Al. HIDTA

Entry: 10:30 am
Exit: 12:30 pm

page 2 of 3

I hereby acknowledge receipt of the following described cash or other item(s), which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|---|
| #8 | 1 | Mead Notebook | NT- Upper shelf of closet in 1st bedroom on Right 10 |
| #9 | 1 | Photograph | WB - Ent. Center 1st Bedroom on Right - 11:25c |
| #10 | 1 | Temp. D.L. of Cory Reed | TC- 2nd bedroom on Right, dresser - 11:25a |
| #11 | | Tarsus 45 cal. Magazine w/ 9 rounds | NT- 1st bedroom on right on shelf - 10:45 am |
| #12 | 1 | Glass Pyro dish w/ Fork & spoon containing suspected cocaine residue | NT- Under sink in Hall bathroom - 11:35a |
| #13 | * | Assorted Paper documents | NT- Back bedroom Dresser 11:45 am |
| #14 | * | Plastic bags containing suspected cocaine | WH- Trash can under carport - 11:51 am |
| #15 | * | Assorted Paper documents (Cory Reed) | NT- Dresser B/R on ® - 11:5 |
| #16 | 1 | Royal Sovereign Money Counter S/N RB4C04041113 | NT- 1st B/R on Right - 10:40 |

RECEIVED BY (Signature): Scott Edwards
NAME AND TITLE (Print or Type): Scott Edwards, TFO
WITNESSED BY (Signature):

50

# U.S. DEPARTMENT OF JUSTICE - DRUG ENFORCEMENT ADMINISTRATION
## RECEIPT FOR CASH OR OTHER ITEMS

**TO:** (Name, Title, Address (including ZIP CODE), if applicable)
Cory Reed
40 Fairlane Dr.
Montgomery, Al

**FILE NO.**

**G-DEP IDENTIFIER**

**FILE TITLE**

**DATE** 4/28/05

**DIVISION/DISTRICT OFFICE**
NOFD / Montgomery, Al. HIDTA

Entry: 10:30 am
Exit: 12:30 pm

Page 3 of 3

I hereby acknowledge receipt of the following described cash or other item(s), which was given into my custody by the above named individual.

| AMOUNT or QUANTITY | DESCRIPTION OF ITEM(S) | PURPOSE (If Applicable) |
|---|---|---|
| | Nothing Follows | |

51

**RECEIVED BY (Signature)**
Scott Edwards

**NAME AND TITLE (Print or Type)**
Scott Edwards, TFO

**WITNESSED BY (Signature)**